## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. Joseph H. Rodriguez |
| | : | Criminal No. 21-493 |
| v. | : | |
| | : | OPINION |
| JOSEPH C. LONG, JR. | : | |

This matter is before the Court on the omnibus motion of Defendant Joseph C. Long ("Long") [Dkt. No. 28] and motion of the Government for reciprocal discovery [Dkt. No. 33]. Long's motion seeks six forms of relief. After a discussion on the record, including Defendant's concession that the Government has complied with its obligations and that several requests in the Omnibus Motion are premature, the only issue left for the Court is Defendant's Motion to Suppress.[1] Specifically, Long claims that a search warrant affidavit that permitted the police to place a Global Positioning Service ("GPS")

---

[1] In addition to the Motion to Suppress, Long also moves for an order directing the Government to disclose exculpatory material under Brady v. Maryland, 373 U.S. 83 (1963), and Jencks Act and impeachment material under Giglio v. United States, 405 U.S. 150 (1972). Long moves, pursuant to Federal Rule of Criminal Procedure 16(a)(1)(G) and Federal Rules of Evidence 702, 703, and 705, for a written summary of anticipated expert testimony. In addition, Long seeks advanced Federal Rules of Evidence 404(b) and 608 evidence and an order requiring law enforcement officers to retain their rough notes taken during the investigation. Finally, Long seeks permission to file an appropriate motion based on newly discovered information provided by the Government.

    During the hearing, the Government advised that it is aware of and has abided by its evidentiary and discovery obligations and that Long's 404(b) request is premature under the governing scheduling order. Long did not object to the Government's averments and agreed that these issues are moot, for now. Long also agreed to produce appropriate discovery in accordance with Federal Rule of Criminal Procedure 16(b)(1), as requested in the Government's cross-motion, which will be granted. As a result, Long's discovery requests are dismissed as moot, and he is permitted to file an appropriate motion based upon any newly discovered evidence.

tracker on his vehicle contained false statements and omissions material to the determination of probable cause.[2] Long requests a hearing pursuant to <u>Franks v. Delaware</u>, 438 U.S. 154 (1978) and argues that after excising the false statements and supplying the omissions, the retooled affidavit lacks the probable cause, and requires the Court to suppress all evidence derived from that search.

The Court has considered the written submissions of the parties, as well as the arguments advanced at the hearing on November 16, 2021.  For the reasons set forth below, as well as the reasons stated on the record during the hearing, the Court will deny Long's motion to suppress.

## I.     Background

For several months in late 2019, Long was the subject of surveillance by a task force comprised of various Local, State and Federal agencies.  On January 15, 2020, Camden County Law Enforcement officers executed a no-knock search warrant at Long's Bellmawr, New Jersey residence. The officers found cocaine, drug paraphernalia among other things.  Long was arrested and charged in a federal criminal complaint with two-counts of 21 U.S.C. §§841(a)(1) and (b)(1)(C). At issue are the affidavits in support of the warrants that lead to Long's arrest, which include search warrants on Long's residence, his parents' Camden, New Jersey residence and a GPS tracking device on Long's car.

---

[2] Of the three relevant search warrants issued in this case, Long's main point of contention relates to the affidavit issued in support of the GPS tracker warrant.  He conceded in his Reply brief and at oral argument that the search warrant of the Camden residence is not at issue and that the Bellmawr premises warrant is subject to scrutiny only as the fruit of the unconstitutional search of the GPS monitoring of the Long's automobile that he was operating during the time of this investigation.

The warrants, authorized by the Honorable Thomas J. Shusted Jr, J.S.C., are predicated upon information gleaned by law enforcement officers' observation of Long for over two months' time and information supplied by a confidential source, PO#1665 ("CS"). Long claims that the search warrant affidavit contained a false statement and glaring omissions material to the determination of probable cause and he moves to suppress all evidence derived from that search of his car by GPS as the fruit of an unconstitutional search.

According to the affidavit, the CS, who "has provided credible and reliable information in the past that has resulted in successful fugitive and narcotics investigations that have led to multiple arrests for CDS and weapons related offenses[]" claimed that a group of black males including Long were distributing marijuana and heroin from Long's parents' home in Camden, New Jersey to supply the drug set located on Ramona-Gonzalez Street between the blocks of 7th and 8th Streets in Camden, that guns were present at the residence and that Long visited the home several times a day, despite not residing there. Ex. B. The affidavit describes several controlled drug buys at the Camden residence in November, 2019 during which the CS, under federal and state law enforcement supervision, purchased marijuana.  Approximately five minutes before the first controlled purchase, the Camden County Sheriff's Department told law enforcement that a black male fitting Long's description was observed driving to the Camden residence in a maroon Kia Optima with Pennsylvania license plate number KCT-3473. Long left in a different automobile before the CS made the buy.

Law enforcement intelligence subsequently revealed that Long was residing in Bellmawr with his girlfriend and surveillance of that apartment confirmed the presence

of the maroon Kia in the vicinity. Agents planned another controlled buy at the Camden residence during the week of December 2, 2019.  Prior to this buy, surveillance observed Long, driving the maroon Kia, arriving at the residence and then quickly exiting, using the Kia to leave the area.  Then the CS purchased a quantity of crack-cocaine from the Camden residence.

On December 5, 2019, Detective DiDomenico of the Camden County Prosecutor's Office observed Long driving the maroon Kia to the Camden address and then quickly exiting. DiDomenico followed the Kia to Admiral Wilson Boulevard onto Route 38 toward Cherry Hill.  DiDomenico avers that because the Kia was travelling at a high rate of speed and weaving in and out of traffic, he terminated the surveillance, but claims that the Kia's maneuvers are consistent with an attempt to evade law enforcement detection.

On December 10, 2019, Detective McDonnell applied to Judge Shusted for a search warrant authorizing a search of the Camden residence, and a search warrant authorizing the installation of a GPS device on the Kia.

In the affidavit, McDonnell states:

> "[i]t is our opinion that while physical and visual surveillance can be conducted to some degree, the usefulness is limited. Continued surveillance in the areas that Joseph Long frequents, poses a severe threat to the integrity of this covert investigation. Continued ongoing surveillance in these areas could be observed by Joseph Long or one of his co-conspirators, friends, neighbors, and employees. Also, the manner in which Long operates his vehicle is consistent with someone who attempts to avoid law enforcement surveillance. Accordingly, we believe that further use of surveillance would be of marginal value with the added likelihood of revealing to anyone involved in this investigation the presence of law enforcement personnel, thus compromising this covert investigation."

Ex. B, p.12

Detective McDonnell believed that the Kia was being used to conceal drugs or drug proceeds, and that the use of the GPS tracker would allow him to learn the vehicle's location and route of travel, detect patterns, assist in identifying other people who were involved in the drug trafficking organization, and detect locations used by the organization to transfer and store drugs and cash, without compromising the covert nature of the investigation. (Exhibit B, pgs. 12-13).

Judge Shusted agreed and issued the Camden premises warrant and the GPS tracker warrant on December 10, 2020.  The GPS device was installed, but the detectives were unable to execute the search warrant for the Camden residence within the allotted ten days; that warrant expired.  In the meantime, the CS informed Detective McDonnell that Long was the source of supply for the Ramona-Gonzalez Street drug set and that Long regularly dropped off crack cocaine packaged for street-level sales to the street-level workers multiple times per day.

The following week, Detective McDonnell arranged for Confidential Source PO#1291, to do a controlled buy from the Ramona-Gonzalez drug set, but surveillance revealed that the drug set was closed at that time, since law enforcement observed multiple suspected drug buyers approach get waved away by the suspected dealers. Meanwhile, surveillance at Long's Bellmawr residence and the GPS tracker confirmed the presence of the Kia. Detective McDonnell observed Long exit the Bellmawr residence and enter the Kia. Visual surveillance and GPS tracker revealed that Long drove directly from his Bellmawr residence to the Ramona-Gonzalez drug set.

In the area of 746 Ramona-Gonzalez Street, Detective DiDomenico observed Long in the Kia when an unidentified black male, who was not carrying anything in his hands,

entered the front passenger seat.  Then, the Kia drove around the block, parked again in the area of 746 Ramona-Gonzalez Street, and the unidentified black male exited the passenger seat of the Kia clutching an unidentified object. The unidentified black male walked to the rear of 746 Ramona-Gonzalez Street with the object, and Long drove away.

DiDomenico observed the same male walk to the front of 746 Ramona-Gonzalez Street, where several suspected drug buyers approached, make contact with the male, and exchange money for small unidentified items that the male retrieved from his waistband. Given the suspected re-opening of the drug set, McDonnell successfully deployed Confidential Source PO#1291 to conduct a controlled purchase of crack cocaine from the same male observed with Long in the Kia.

McDonnell avers that he and another agent attempted to follow Long's Kia on December 18, 2019 in the area of Ninth and Spruce Streets in Camden.  He claims that Long was aware he was being tailed, a conclusion they drew when Long "saluted" them as he drove by and seemed to inform his passengers of law enforcement's presence. The following day, McDonnell and DiDomenico observed Long drive the Kia to the Ramona-Gonzalez drug set, then drive back to the Bellmawr apartment where Long noticed them as he exited the vehicle. Long stared at the detectives for approximately ten seconds before walking inside the apartment.

An additional controlled drug buy took place at the Camden residence.  The GPS information confirmed travel from the Bellmawr residence directly to the Ramona-Gonzalez drug set on nine separate occasions coupled with information from another Confidential Source confirmed that the suppliers of the Ramona-Gonzalez drug set are a

Hispanic male and a black male who had "dreads" down to his neck, a description consistent with Long's appearance caused law enforcement to seek another premises warrant for both the Camden and Bellmawr residences.  The warrants were issued on January 9, 2020, and simultaneously executed on January 15, 2020. Long seeks to suppress the evidence seized at his home, but not from the Camden address, because it flows from the unconstitutional GPS warrant.[3]

Long claims that the affidavits lack probable cause and omit several material facts, including the fact that no one other than the CS visited the Camden residence for the actual purchase of contraband, when actually the CS' sister lived at Camden residence and was a welcome guest at the residence, often spending the night.  Also, he claims there is no connection alleged between him and the people who buys drugs Camden residence. Long also claims he is never physically present at the Camden residence at the same time as the CS. In addition, he claims the affidavit omits that Long's parents are the owners and residents of the Camden residence and have lived there for over 20 years. Long also denies that the drugs turned over to law enforcement by the CS involved the Camden residence.

He also denies driving[4] recklessly or frequenting the Camden residence multiple times a day and denies any association with any drug users or dealers during this investigation. In short, he claims that after two months of surveillance, law enforcement was unable to connect Long to the other younger black males at the Camden residence

---

[3] Long concedes law enforcement surveillance of the activity at the Camden address, including the CS's controlled drug buys, demonstrate the requisite probable cause for the Camden premises warrant.
[4] Long has a suspended driver's license and claims he always operated his vehicle in a manner to avoid being pulled over for a moving violation and exposing his licensing status.

or to the CS's controlled buys. For these reasons, he seeks suppression of evidence seized because the affidavits submitted in support of the application for the GPS search warrant were misleading because of the false statement about his reckless driving and the material omissions related to Long's and the CS's connections to the Long family's ownership of the Camden residence. As a result, he claims he is entitled to a <u>Franks</u> hearing.

## II.   <u>Standard of Review</u>

The Fourth Amendment ensures "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Relevant here, the intentional or reckless inclusion of a false material statement or the omission of material information in a search warrant application is prohibited under the Fourth Amendment. <u>United States v. Yusuf</u>, 461 F.3d 374, 383-4 (3d Cir. 2006). Therefore, for a search to be constitutionally reasonable, "it must be effectuated with a warrant based on probable cause." <u>See</u> <u>United States v. Brown</u>, 448 F.3d 239, 245 (3d Cir. 2006) (quoting <u>United States v. Robertson</u>, 305 F.3d 164, 167 (3d Cir. 2002).

## III.   <u>Analysis</u>

Long's arguments necessitate review of the affidavits underpinning the warrants issued by Judge Shusted. A reviewing court is required to afford great deference to the probable cause finding of the issuing court. <u>See</u> <u>United States v. Hodge</u>, 246 F.3d 301, 305 (3d Cir. 2001); <u>United States v. Jones</u>, 994 F.2d 1051, 1055 (3d Cir. 1993). Under this standard, the affidavits enjoy "a presumption of validity," <u>see</u> <u>Franks</u>, 438 U.S. at 171, and will be upheld as long as the supporting documents provided a substantial basis

for the initial determination of probable cause. Hodge, 246 F.3d at 305; Jones, 994 F.2d at 1055.

Long argues the facts of this case fall into the limited circumstances which permit him to challenge the veracity of the affidavits, as contemplated in Franks, 438 U.S. at 155–56. To obtain a Franks hearing, Long must make a "substantial preliminary showing" that the affidavits contained a false statements or omissions that (1) were made knowingly and intentionally or with reckless disregard for the truth, and (2) were material to the finding of probable cause. Id.  Moreover, the "allegations of deliberate falsehoods or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof." Id. at 171; see also United States v. Muhammad, No. 14-CR-136 (JBS), 2015 WL 5996289, at *5 (D.N.J. Oct. 13, 2015).

Long's bald denials related to his observed driving and his relationships with drug users and dealers are insufficient to trigger a Franks hearing. A defendant's request for a Franks hearing "cannot rest on mere conclusory allegations […] but rather must present an offer of proof contradicting the affidavit, including materials such as sworn affidavits or otherwise reliable statements from witnesses." Yusuf, 461 F.3d at 383 n. 8 ("[i]n order to make this preliminary showing, the defendant cannot rest on mere conclusory allegations or a 'mere desire to cross-examine[.]'"); United States v. Heilman, 377 Fed. Appx. 157, 177 (3d. Cir. 2010).

 Likewise, Long's argument that the omission of the CS's relationship to him and to his family, who own the Camden residence, are material facts which undermine the determination of probable cause fails to cast sufficient doubt on the magistrate's decision.  This argument discounts that the GPS affidavit noted that Long, who lived

elsewhere had family living at the Camden residence.[5] Even if such facts were known to the magistrate, there is a variety of other evidence from which probable cause can be inferred. Most notably the observations of the pattern of the Kia as frequenting the Camden residence and confirmation of the identity of Long by other confidential sources.  Long's criminal record, including two 2016 drug trafficking convictions, was also known to law enforcement and his driving behaviors fit the profile of someone attempting to elude detection.

The Court agrees that the fact that the CS was vouched for by law enforcement is, alone, not determinative of the CS's veracity and that knowing the relationship of the CS to Long and his family could have added value to the calculus.  But the absence of such evidence does not sufficiently undermine the probable cause determination.  To be sure, the affidavit of McDonnell notes that "members of Joseph Long's family" resided at the Camden residence, a fact presented to the magistrate.  The affidavit also recounts the CS's history of reliability which resulted in multiple arrests for drug and weapons offenses and describes how law enforcement independently corroborated information supplied by the CS. In addition, there is sufficient visual surveillance evidence placing Long at the Camden residence minutes before several of the CS's controlled buys. When viewed in conjunction, the forgoing facts provide the requisite substantial basis for a finding of probable cause despite the alleged false statement and omissions and

---

[5] Long insists this fact supports a non- criminal reason for being at the house, he was visiting his parents. His parents also submitted affidavits attesting to the fact that their house was not used as a drug house.  Long visited the house over six times on certain days, a fact that serves to undermine this self-serving statement.  In addition, the affidavits supplied by his mother and step-father are belied by the amount of drugs, paraphernalia, and weapons confiscates when agents executed the warrant on their home.  As such, there is no evidence sufficient to create a "substantial preliminary showing" that the search warrant affidavit contained any false statements or omissions, which were knowingly or recklessly made, and which were material to the finding of probable cause.

consideration of mere coincidences. <u>Williams</u>, 974 F.3d at 351; <u>United States v. Stearn</u>, 597 F.3d 540, 555-57 (3d Cir. 2010).

Long's remaining argument that he never sold drugs to the CS and/or that the drugs the CS provided had no connection to him at the Camden residence fails to consider that direct evidence is not required under the law; probable cause can be inferred from a variety of facts including inferences about where a criminal might hide evidence, a proposition particularly relevant here given the amount of surveillance and timing of Long's visits to the Camden residences as being consistent with the circumstances. <u>Jones</u>, 994 F.2d 1051, 1056, (3d Cir. 1993) (citing <u>United States v. Jackson</u>, 756 F.2d 703, 705 (9th Cir. 1985)).

The Court finds that Judge Shusted, even with the alleged material omissions had a basis to "to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense." <u>United States v. Whitner</u>, 219 F.3d 289, 297 (3d Cir. 2000); <u>see</u> also <u>United States v. Ventresca</u>, 380 U.S. 102, 109 (1965) ("the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants."). In short, the determination of probable cause deals with "probabilities," and not "hard certainties." <u>Illinois v. Gates</u>, 462 U.S. 213, 231, (1983); <u>Stearn</u>, 597 F.3d at 554; <u>Hodge</u>, 246 F.3d at 305-06. Here, the totality of the circumstances demonstrates a "fair probability" of evidence of a drug trafficking network and the use of other locations of criminal activity. <u>United States v. Bond</u>, 581 F.3d 128, 139 (3d Cir. 2009) (quoting <u>Gates</u>, 462 U.S. at 238).

Long is not entitled to a <u>Franks</u> hearing because he fails to make a "substantial preliminary showing" that the search warrant affidavits contained a false statement or

relevant omissions, which were knowingly or recklessly made, and which were material to the finding of probable cause and, therefore, Long cannot overcome the general presumption of validity regarding the affidavits. Franks, 438 U.S. at 171; see also United States v. Aviles, 938 F.3d 503, 508-09 (3d Cir. 2019); Yusuf, 461 F.3d at 383.

Long's Motion to Suppress will be denied.

IV.    Conclusion

For the reasons stated above, Long's Omnibus Motion is denied as to the motion to suppress and dismissed as moot, with the right to renew if the Government fails to meet its evidentiary and discovery obligations.  The Government's request for reciprocal discovery was agreed to by Long and that motion is therefore moot.

An appropriate Order shall issue.


Dated: February 8, 2022

                                    /s/ Joseph H. Rodriguez
                                    HON. JOSEPH H. RODRIGUEZ,
                                    United States District Judge